**UNITED STATES of America,**
**Appellee,**

v.

**Aaron L. JACKSON, Defendant–**
**Appellant.**

**No. 02–1264.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 13, 2003.

Decided: May 6, 2004.

Katherine Polk Failla, Assistant U.S. Attorney, New York, N.Y. (James B. Comey, U.S. Attorney for the Southern District of New York, Gary Stein, Assistant U.S. Attorney, on the brief), for Appellee.

Steven M. Statsinger, The Legal Aid Society, Federal Defenders Division, New York, NY, for Appellant.

Before: LEVAL and CABRANES, Circuit Judges, and AMON, District Judge.*

LEVAL, Circuit Judge.

Defendant Aaron L. Jackson appeals from the judgment of the United States District Court for the Southern District of New York convicting him, after a jury trial, of possession of ammunition by a previously convicted felon, in violation of

---

* The Honorable Carol B. Amon, United States District Judge for the Eastern District of New York, sitting by designation.

18 U.S.C. § 922(g)(1).[1] Jackson challenges the legal sufficiency of the trial evidence offered to prove that, at the time he possessed ammunition, he had a prior felony conviction. The government sought to prove the essential element of the defendant's prior felony conviction by a court record showing a 1984 New York felony conviction for a person named Aaron Jackson. The defendant contends this was insufficient to satisfy the burden of proving *beyond a reasonable doubt* that he was the Aaron Jackson convicted in 1984.

The government argues that a conviction record in the defendant's name is sufficient *if the defendant offers no contrary evidence.* The government also argues that the defendant's identity as the subject of the 1984 conviction was sufficiently corroborated by other evidence. Finally, the government contends that, even if the evidence was insufficient to satisfy the government's burden of proof in a criminal case, the conviction should nonetheless be affirmed because the defendant should either be deemed to have stipulated the fact of his prior conviction, or be barred from contesting the sufficiency of the evidence by reason of deceptive conduct on which the government relied in refraining from offering additional evidence.

We cannot accept the government's arguments. Without more, a court record showing a conviction of a similarly named person (especially an eighteen-year-old record) cannot conceivably furnish assurance beyond a reasonable doubt that it pertains to the present defendant. We reject the government's proposed rule that

sufficiency is satisfied as the result of the defendant's failure to offer proof in rebuttal. The government's argument that the defendant's identity as the person convicted in 1984 was sufficiently corroborated by other evidence is insubstantial, as the corroborating evidence was scant and unconvincing. Finally, we see no merit in the government's contention that the defendant either stipulated his prior conviction or engaged in deceptive misconduct which should excuse the government from its burden of proof.

## BACKGROUND

The defendant was found guilty at a trial conducted on November 5 and November 6, 2001. Special Agent Matthew White of the United States Bureau of Alcohol, Tobacco and Firearms (the "ATF") was the principal government witness. He testified that, in carrying out his duties, which included investigating illegal possession of firearms by convicted felons, he and other agents of the ATF went on September 7, 1999 to Jackson's apartment in the Bronx and asked him whether he had any firearms or ammunition, whereupon Jackson showed them a safe containing a quantity of ammunition.[2] The agents seized the ammunition.

To prove that Jackson was a previously convicted felon, the government offered a certified copy of a judgment of the New York Supreme Court for New York County (Manhattan) showing that on January 11, 1984, a person named Aaron Jackson was convicted of unlawful possession of a weapon and of a controlled substance. The government offered no further evi-

---

1. The trial and all the relevant proceedings discussed in the opinion were conducted by the Honorable Samuel Conti, United States District Judge for the Northern District of California, sitting by designation in the Southern District of New York. The judgment and

sentence were imposed by the Honorable George B. Daniels of the Southern District of New York.

2. The ammunition was manufactured outside the State of New York.

dence connecting the defendant to the 1984 conviction. The defendant neither testified nor called witnesses in his defense. On summation, defense counsel argued for the first time that the government had failed to prove that the Aaron Jackson named in the certificate of conviction might be someone other than the defendant on trial.[3] The jury found the defendant guilty.

## DISCUSSION

### A. Sufficiency of the evidence.

■ The test for determining a challenge to the sufficiency of the evidence asks whether a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Best*, 219 F.3d 192, 200 (2d Cir.2000). The evidence, in other words, must be of such persuasive quality that a jury could reasonably find the essential elements *beyond a reasonable doubt* on the basis of that evidence.

■ (1) *The persuasive force of a conviction record in the defendant's name.* The first question we face is whether a fact-finder, given the evidence presented at trial of a 1984 conviction record of a person named Aaron Jackson, could reasonably conclude *beyond a reasonable doubt* from that evidence alone that the 1984 conviction was of the defendant, Aaron L. Jackson. We do not see how such a degree of confidence could possibly be justified by this evidence. There was no reason to believe the defendant was the only person so named. The name Jackson is

quite common, and the first name Aaron, which is of biblical origin, is also quite common. New York is a city of nearly eight million inhabitants, plus a huge number of additional visitors.

If A were to speak of an acquaintance in the City of New York named Aaron Jackson, and B responded, "Why, yesterday in New York City I met a person named Aaron Jackson," one could not be reasonably certain that they were speaking of the same individual. And if B's response were, "Eighteen years ago in New York City I met someone named Aaron Jackson," the likelihood would be even smaller that the two Aaron Jacksons were one and the same.

Or, suppose a defendant named Aaron Jackson were being tried for bank robbery; the fact of the robbery was amply proved but without evidence of the identity of the robber; the only evidence offered by the prosecution to prove that the robbery was committed by the defendant was a showing that the robber's name was Aaron Jackson. We think it inconceivable that such a conviction could be sustained under the standard of *Jackson v. Virginia*.

The issue we face is essentially the same as posed in these hypotheticals. Notwithstanding that the evidence was provided by an official court certificate, that certificate established no more than that the convicted person was called Aaron Jackson. The fact that someone named Aaron Jackson was convicted of a crime some eighteen years earlier in New York undoubtedly raises a possibility that it might have been the same person as the Aaron

---

**3.** "The court documents you have in front of you say this defendant is named Aaron L. Jackson. How do we know that the Aaron Jackson on this piece of paper [the certified copy of the 1984 judgment], with no middle initial, is the same person? It is a relatively common name. Maybe the person in this case isn't even named Aaron Jackson. Maybe he went through under an alias. We don't know, because we don't have any evidence." Trial Transcript at 118–19.

L. Jackson now on trial in New York. But, as a proposition of logic, one cannot conceivably justify a conclusion *beyond a reasonable doubt* that it is the same person.[4]

A conclusion cannot be reached with sufficient confidence to satisfy the beyond-reasonable-doubt standard that two separate episodes involving persons of similar features relate to the same person unless the similarities are sufficiently distinctive to make it highly improbable that the two observed persons could be other than the same. Thus, where two separately observed individuals share a highly distinctive feature in common, such as identical DNA or identical fingerprints, we can conclude beyond reasonable doubt that they must be the same person because of well-established scientific information that a particular structure of DNA and a particular fingerprint configuration occur in only one individual. However, when the points of similarity are less unique or distinctive, more similarities are required before the probability of identity between the two becomes convincing. If a conviction record showed only that the convicted person had the same common blood type as the defendant (instead of the same DNA or fingerprint configuration), that would give little or no reason to believe they were the same person because such blood types are widely shared. Two sightings in the same city describing a six foot tall, dark haired man in his thirties would give little assurance that they were of the same person because many people fit that description. On the other hand, the more two portraits are amplified to include further similarities—such as that both were the same age and had the same birthday, the same coloring of skin, eyes, and hair, the same distinctive birthmark, the same unusual clothing, the same name, the same Social Security number, or perhaps that both were seen to engage in the same unusual, distinctive conduct, or were seen at the same place, the more probable it becomes that they refer to the same individual. It is a matter of making either a statistical assessment, or in the absence of statistics, an informal experience-based assessment of probability, that the particular coincidence of similarities is highly unlikely or improbable unless the two persons are the same.[5] A conclusion of identity cannot be made *beyond a reasonable doubt* unless experience, or statistics (if admissible), teach it is *far* more likely, given the similarities, that the two are the same person, than that they are two different people. The evidence must make it highly improbable that two different people are involved.[6]

No such judgment can be made with any reasonable degree of confidence from two observations, eighteen years apart, of persons with the not-unusual name of Aaron Jackson, in a city with a population exceeding eight million. The government offered no evidence that the two Aaron Jacksons were of the same race, or of similar height, coloring, fingerprint configuration,

---

**4.** *See generally* Jon O. Newman, *Beyond "Reasonable Doubt,"* 68 N.Y.U. L.Rev. 979, 989–996 (1993).

**5.** *See Smith v. Rapid Transit,* 317 Mass. 469, 58 N.E.2d 754 (1945) (where plaintiff's injury was caused by a negligently operated, unidentified bus, directed verdict in favor of defendant sustained. Where defendant bus company had the sole practice for operating a bus route where the accident occurred but "this did not preclude private or chartered buses from using [the particular] street[,] the bus in question could very well have been operated by someone other than the defendant.").

**6.** For a discussion of the use of probabilistic data to support convictions, see Laurence H. Tribe, *Trial by Mathematics: Precision and Ritual in the Legal Process,* 84 Harv. L.Rev. 1329, 1372–1375 (1971).

or even general physical description. There was no showing of the previously convicted Aaron's age. There was no showing that he was a resident of New York, much less that he lived at the same address as the defendant, or that the two shared any other significantly narrowing features. The jury had no reason to believe that the name Aaron Jackson is of sufficiently rare incidence in New York City to make it improbable that an individual of that name convicted in 1984 was the person now on trial before them eighteen years later. We cannot characterize it as highly improbable that two different persons were involved. In short, on this evidence, a jury could not reasonably conclude *beyond a reasonable doubt* that the two Aaron Jacksons were the same.

■ (2) *The government's proposed conditional rule and the presumption of innocence.* The government invites us to adopt a special rule of *conditional* sufficiency. The rule the government advocates would be that where a prior conviction is an essential element of the crime charged, a court certificate of conviction of a similarly named person will be deemed to satisfy the beyond-reasonable-doubt standard *if the defendant offers no evidence in rebuttal.* ("The rule simply provides that, where the Government produces evidence of the prior felony conviction in the form of a certified copy of the judgment in the defendant's name, *and there is no evidence to the contrary,*" the evidence will be found legally sufficient. Government's Brief at 23 (emphasis added).) The government argues, in other words, that even though the certificate attesting to the conviction of a person of the same name as the defendant may be insufficient *by itself* to prove the defendant's prior conviction beyond a reasonable doubt, the defendant's failure to offer evidence in rebuttal converts the insuffi-

cient evidence into legally sufficient evidence.

We must reject the rule proposed by the government. No such rule exists in this circuit. We see no reason for such a rule. Furthermore, such a rule could not easily be reconciled with fundamental constitutional principles found by the Supreme Court to be embodied in the Due Process Clause of the Fifth Amendment—the presumption of innocence, and the related requirement of proof beyond a reasonable doubt to sustain a criminal conviction.

■ While we do not rest our decision on the constitutional ground, we begin by discussing the constitutional cases that bear on the question. In a series of decisions primarily in the 1970s, the Supreme Court made clear that the presumption of innocence and the requirement of proof beyond a reasonable doubt, long recognized as fundamental principles of criminal law, are imbedded in the Fifth Amendment's command that "no person shall … be deprived of … liberty … without due process of law." Taken together, these principles mandate that, in order to secure a criminal conviction, the prosecution must present evidence establishing the defendant's guilt beyond a reasonable doubt and that, if it fails to do so, the defendant is entitled to acquittal without having to offer evidence in his defense.

In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. 1068. The Court noted that this requirement dates "at least from our early years as a Nation" and had been expressed in similar form "from ancient times." *Id.* at 361, 90 S.Ct. 1068. The Court reasoned that,

use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned.

*Id.* at 364, 90 S.Ct. 1068. In explanation of the relationship between the reasonable doubt standard and the presumption of innocence, the Court said:

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. *The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law."*

*Id.* at 363, 90 S.Ct. 1068 (emphasis added) (quoting *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895)). And a few years later, in *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the Court said of the presumption of innocence, that "although not articulated in the Constitution, [it] is a basic component of a fair trial under our system of criminal justice."

■ The Court has recognized that the presumption of innocence requires that the accused be acquitted so long as the government has not proved every element of the offense beyond a reasonable doubt, without any requirement that the accused offer evidence (or indeed lift a finger) in his defense.[7] In *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), it stated:

> It is now generally recognized that the presumption of innocence is an inaccurate, shorthand description of the right of the accused to *remain inactive and secure,* until the prosecution has taken up its burden and produced evidence and effected persuasion, *i.e.,* to say in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of the claim or charge must evidence it.

*Taylor,* 436 U.S. at 483 n. 12, 98 S.Ct. 1930 (emphasis added) (internal quotation marks omitted). It is therefore a tenet of

7. In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court struck down a Maine statute which, as interpreted by the Maine Supreme Court, required a defendant charged with murder to prove by a preponderance of the evidence that the defendant acted in the heat of passion on sudden provocation in order to reduce the murder to manslaughter. The Court found the statute unconstitutional in shifting a burden from the prosecution to the defendant. In light of *Winship,* the court ruled that where malice aforethought is an element of the offense, the Due Process Clause requires the prosecution to prove the absence of heat of passion beyond a reasonable doubt. *Id.* at 703, 95 S.Ct. 1881. We recognize that the issue in *Mullaney* was in some respects different from ours. The rule here proposed by the government would not, like the Maine statute in *Mullaney,* place a burden of *proof* on the defendant. It would, however, place on the defendant a burden of *production.* It would excuse the government from proving each element of the offense beyond a reasonable doubt without regard to whether the defendant offers contradictory proof. It would treat evidence incapable of persuading beyond a reasonable doubt as if it possessed the required degree of persuasiveness—unless the defendant offered contradictory evidence. While the government may be correct that its proposed rule is not incompatible with the precise holding of *Mullaney,* its rule would nonetheless cause substantial tension with a principle underlying *Mullaney* that the prosecution must prove the defendant's guilt beyond a reasonable doubt without obligation on the defendant to lift a finger in defense.

our criminal law that "[i]f the prosecution fails in its case-in-chief to present evidence establishing a prima facie case for conviction, the defense is entitled to a directed acquittal without the necessity of ever producing its own evidence." LaFave, Israel, & King, 1 Criminal Procedure § 1.4(d) (2d ed.2004).[8] (As generally understood, this principle permits the defendant to sit through the trial in total passivity and guarantees a judgment of acquittal unless the prosecution introduces evidence of sufficient persuasive force to sustain a finding against the defendant beyond a reasonable doubt on each essential element of the charge.)

Although the government does not expressly acknowledge this, its argument assumes that the presumption of innocence operates differently with respect to proof of a prior conviction, as an element of a crime, than in the case of other elements. Returning to our example of a bank robbery, we do not think the government would argue that the conviction of an Aaron Jackson on charges of bank robbery could be sustained on mere proof that the robber's name was Aaron Jackson (without more to demonstrate that it was this Aaron Jackson) through the justification that the defendant did not offer evidence in rebuttal. It seems perfectly obvious that such a conviction could not be squared with the presumption of innocence and the burden of proof beyond a reasonable

doubt. The question arises whether the presumption of innocence should be any different when the essential element in question is the defendant's prior felony conviction.

We recognize that in *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court declined to require that a prior conviction of an aggravated felony be pleaded in the indictment where that conviction served to increase the maximum possible penalty under 8 U.S.C. §´ 1326(b). *See also United States v. Latorre-Benavides*, 241 F.3d 262, 263–64 (2d Cir.2001) (holding that sentencing enhancement under 8 U.S.C. § 1326 was not required to be charged in the indictment). But *Almendarez-Torres* gives no support to the government's argument. The reason it was unnecessary to plead the prior conviction in the indictment was the Court's finding that the statute classified the prior conviction as a sentencing factor and not an element of the crime. *Almendarez-Torres*, 523 U.S. at 235, 118 S.Ct. 1219. The implication of the Supreme Court's opinion was that if the prior conviction had been an element of the crime, it would be treated like any other element. In our case, it is unquestionable that a prior conviction is an element of the offense under 18 U.S.C. § 922(g)(1); a gun owner does not violate the law unless previously convicted of a felony.[9]

8. *See also* Christopher B. Mueller & Laird C. Kirkpatrick, 1 Federal Evidence § 77 (2d ed. 2003) ("[T]he 'presumption of innocence' .... is a way of forcefully emphasizing to the jury that the prosecutor has the obligation to prove each element of the offense beyond a reasonable doubt, that the accused bears no proof burden whatsoever with respect to any element of the crime, and that no adverse inference should be drawn against [the accused] from the fact of [ ] arrest, indictment, or presence in court.").

9. In seeking to justify the different treatment of prior convictions under *Almendarez-Torres* from other facts that increase the penalty for a crime beyond the statutorily prescribed maximum (*see Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that any fact other than a prior conviction that increases the penalty for a crime beyond the otherwise prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt)), the Court made the curious comment that where the fact is a prior conviction, the defendant

Having outlined the constitutional background, we do not rest our holding on a constitutional ground. It suffices to say that, at least in this circuit, the rule proposed by the government has never been recognized, and we see no reason why it should be. Putting aside the question whether the courts or Congress or a state legislature could lawfully establish a presumption that would deem an essential element of a crime sufficiently proved by some specified evidence, in the absence of evidence to the contrary, we can see no reason to establish such a presumption for proof of a prior conviction as an element of the offense. To the contrary, in our view there are excellent reasons for rejecting such a rule.

In the first place, a presumption that a certificate of conviction in the defendant's name is adequate to prove the defendant's prior conviction would have little logical underpinning. Names, of course, vary enormously in commonness, some names being shared by a great many users. As discussed above, the mere fact that a person of the same name as the defendant was convicted gives little support to the proposition that it was the defendant.

Furthermore, the prosecution has no need for such a presumption. In general, the records of courts, prosecution offices, investigative agencies, and prisons contain ample data identifying persons who have been convicted. Prosecutors have easy access to such data. Where the prosecutor needs to prove that a person now on trial was previously convicted, the prosecutor should have no difficulty obtaining the evidence necessary to make that showing. In fact, in most cases, it should be far easier for the prosecution than for the defendant to obtain evidence which conclusively establishes whether the defendant is the person previously convicted.

In short, apart from the tensions such a rule would create with the presumption of innocence, there is no need for such a rule, no logic to support it, and no precedent in our circuit to justify it. We decline to create the rule the government advocates.

The government further argues that failure to accept its argument would be tantamount to adopting a rule that prior convictions can be proved only by "direct evidence such as fingerprints." Government Brief at 26. This misunderstands the issue. We in no way suggest that "direct" evidence is needed to prove a defendant's prior conviction. What is needed is evidence of sufficiently persuasive character that it can reasonably support a finding beyond a reasonable doubt of the defendant's prior conviction. Where the essential element at issue is a prior conviction, evidence of this nature will usually be circumstantial. (Indeed, fingerprint identity is circumstantial evidence. It proves a fact which, together with other facts (such as the unique nature of fingerprints) permits the deduction that the defendant must have been the person named in the certificate of conviction. *See* McCormick on Evidence § 185 (5th ed.

---

has already received the process that is due. *See Jones v. United States,* 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ("One basis for [the] constitutional distinctiveness [of *Almendarez–Torres*] is [that] ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees."); *Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348 (same). We respectfully believe that the

due process the convicted person received in the prior proceeding is not apposite to our issue. The question in the new proceeding is not whether the conviction in the prior proceeding conformed to due process. It is whether the defendant was the person convicted in the prior proceeding. The defendant has never received due process on that question, because the question has never before been adjudicated.

2003) ("Direct evidence is evidence which, if believed, resolves a matter in issue. Circumstantial evidence also may be testimonial, but even if the circumstances depicted are accepted as true, additional reasoning is required to reach the desired conclusion.").) Our ruling in no way limits the types of evidence that may be used to show the defendant's prior conviction. Sufficient evidence might well be found in the conviction certificate alone if it included such additional details as age, date of birth, address, or social security number. The only requirement is that the evidence be of sufficiently persuasive force to satisfy the government's burden to prove the elements of the offense beyond a reasonable doubt.[10]

(3) *Rulings by other courts.* We acknowledge that the government has a small number of court decisions employing the rule it advocates. The Fifth and Ninth Circuits and an intermediate state court have ruled in accordance with the government's argument. But the federal court decisions supporting the government's position, made prior to *Winship*, neither recognized the tension between the rule and the presumption of innocence, nor weighed reasons that argue for or against such a rule. We find them unconvincing.

In *Rodriguez v. United States*, 292 F.2d 709 (5th Cir.1961), the defendant was criminally charged with entering the United States without registering at the border, as was required for a citizen previously convicted of marijuana possession. *Id.*, at 709–10. To prove the previous marijuana conviction, the government presented a certified copy of the judgment and sentence of a Houston court from 1956 for a "Gilbert C. Rodriguez," together with a copy of the defendant's birth certificate showing his name as "Gilbert Rodriguez, Jr." *See id.* at 710; *United States v. Rodriguez*, 195 F.Supp. 513, 515 (S.D.Tex.1960). The Fifth Circuit ruled the evidence sufficient to establish the defendant's prior conviction, relying on the absence of evidence to the contrary and the defendant's failure to object to the receipt of the conviction record.[11] *Rodriguez*, 292 F.2d at 710.

The Ninth Circuit reached the same result by transposing a rule made in a civil case into a criminal case. *Chew v. Boyd*, 309 F.2d 857, 867 (9th Cir.1962), was a civil case, in which the petitioner sought to set aside a deportation order. In the deportation proceeding conducted before an administrative judge, the INS had introduced a certificate of conviction in the same name as the petitioner's in order to prove his deportability. While overturning the departure order for other reasons, the Ninth Circuit rejected the petitioner's contention that the certificate of conviction in the same name was insufficient to establish his conviction. The court stated that "identity of names ... was sufficient to prove iden-

---

**10.** This requirement furthermore applies only to instances when the prior conviction at issue is an essential element of the offense charged. When the government seeks to prove a prior conviction for another purpose, such as to impeach the defendant's credibility, or as a sentencing factor, the present ruling would have no application. The prosecution is not compelled to prove every fact beyond a reasonable doubt—only the essential elements of the offense charged. *See State v. Grady*, 153 Conn. 26, 211 A.2d 674, 677–78 (1965).

**11.** The Court of Appeals relied in part on the reasoning of the trial court, which had noted the absence of contrary evidence, *Rodriguez*, 195 F.Supp. at 515, and in part on its own observation of the defendant's failure to object to the receipt of the documents. As for the defendant's failure to object to the receipt of the certificate, we think the court's reasoning conflates two very different principles— the admissibility of evidence and its sufficiency to prove an offense.

tity, where no effort was made to rebut such proof." *Id.* at 867. The Ninth Circuit later went on to transpose this rule into criminal cases, without considering whether this would be compatible with the different standards governing criminal cases.

*Bayless v. United States,* 381 F.2d 67 (9th Cir.1967), was a criminal prosecution for escape from confinement. The elements of the offense included that the defendant had been convicted of a criminal offense, was in confinement by reason of that conviction, and escaped from that confinement. The evidence showed that John Richard Bayless was convicted of bank robbery and sentenced, that he was serving his sentence at McNeil Island, which is used solely as a prison, that he escaped from that prison and was recaptured on McNeil Island. The government had introduced a certified copy of the judgment, showing the conviction of John Richard Bayless. Among many claims advanced on appeal, the defendant argued the insufficiency of the evidence that he was the person convicted. The court rejected the contention with brief discussion saying, "In fact there [was] much proof." After noting the defendant's somewhat unusual name, the court reviewed the chain of custody of the defendant from his conviction through his confinement on McNeil Island, up to his escape from the facility on McNeil Island and his capture there two days later. *Id.* at 74. Having concluded that the evidence of the defendant's conviction was amply proved by the chain of custody, the court added, "This court has held that identity of a name is sufficient to establish the identity of the person in the absence of contradictory evidence," citing *Chew v. Boyd. Id.* In saying this, the court

expressed no recognition that the *Chew* ruling had been in the context of a civil case, or of any arguable tension between the use of the *Chew* rule in a criminal case and the presumption of innocence. The reference to the *Chew* standard was, furthermore, unnecessary because the defendant's identity as the person convicted many years before was convincingly proved by the chain of his custody, so that there was no need to rely on the mere name identity.

This issue arose again in the Ninth Circuit in 1968 in *Pasterchik v. United States,* 400 F.2d 696 (9th Cir.1968). *Pasterchik* was a criminal prosecution for transportation of a firearm by a previously convicted felon. To prove the defendant Michael Pasterchik's prior conviction, the government introduced a copy of a Montana judgment of conviction, dated 1950, for a "Michael Pasterchik." The Ninth Circuit affirmed the conviction. It observed that "the prosecution was somewhat careless" in failing to offer "more convincing evidence." *Id.* at 701. However, citing *Chew* and *Bayless,* the court ruled that "identity of a name is sufficient to establish the identity of the person in the absence of contradictory evidence," especially because "there was no objection to the introduction of the Montana judgment." *Id.* at 701–02.

The *Chew* rule thus migrated from a civil case, in which it was formulated, into the criminal context, without discussion of whether such a rule is appropriate in a criminal case. We intimate no view regarding the application of the *Chew* rule in a civil case.[12] However, we find quite unpersuasive its use in *Pasterchik* for the proof of an essential element of a criminal

---

12. *Cf. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

prosecution.[13]

The majority of courts to consider the question have agreed with our conclusion that a conviction certificate in the same name as the defendant's is insufficient to prove that the defendant had a prior conviction as an essential element of the crime charged. The Third and the Tenth Circuits have each so held, as have numerous state courts.

In *United States v. Weiler*, 385 F.2d 63 (3d Cir.1967), the defendant—Harry Weiler—was accused of falsely stating on a firearms license application that he had never been convicted of a crime punishable by a term of imprisonment exceeding one year. *Id.*, at 65. To prove that the defendant had been so convicted, the government introduced an exemplified conviction record showing that a "Harry Weiler" had been convicted by a state court of assault and battery in Philadelphia nearly twenty years earlier. *Id.* at 66. The government presented evidence that the defendant had lived in Philadelphia at the time of the conviction, plus a pre-trial statement by the defendant that he had previously been arrested by the Philadelphia police. The Third Circuit held that this evidence was insufficient to establish the prior conviction of the defendant. The court distinguished an earlier ruling finding sufficient the evidence of a prior conviction for a man with a "very unusual name," living at the same address, who was convicted in the same court, of the same offense. *Id.*

The Tenth Circuit ruled in similar fashion. In *Gravatt v. United States*, 260 F.2d 498 (10th Cir.1958), Earl Elmer Gravatt was tried in the United States District Court for the Western District of Oklahoma for interstate transportation of a firearm after having previously been convicted of a crime of violence. To establish the previous conviction, the government introduced a certified copy of a judgment and sentence from an Oklahoma state court dated 1939, bearing the name "Earl E. Gravatt." *Id.* at 498–99. The Tenth Circuit noted: "It is common knowledge that in many instances men bear identical names" and ruled that the evidence, without more, was not sufficient to prove the defendant's prior conviction.

A number of state courts have made similar rulings. *See, e.g., Commonwealth v. Koney*, 421 Mass. 295, 657 N.E.2d 210, 214–15 (1995) (holding that court documents of prior convictions bearing the name "Roger A. Koney" were insufficient to prove the identity of defendant "Roger A. Koney" to support conviction for driving under the influence while having been previously convicted three or more times because "[m]ere identity of name is not suffi-

---

13. The government also relies on *Corona–Palomera v. INS*, 661 F.2d 814 (9th Cir.1981), which is inapplicable because it was not a criminal case. Only one state court ruling, by a mid-level appeals court in Georgia, clearly adopts the government's position. *See Lewis v. State*, 234 Ga.App. 873, 508 S.E.2d 218, 222 (1998) (upholding identification of defendant Marvin Lewis as a convicted felon on the basis of a certified copy of a guilty plea for a "Marvin Lewis" because "in the absence of any denial by [Lewis] and no proof to the contrary[,] this concordance of name is sufficient") (alterations in original). *See also State v. Wyckoff*, 27 N.J.Super. 322, 325–26, 99 A.2d 365 (N.J.Super.Ct.App.Div.1953) (conviction certificate in the same name as defendant received with the consent of defense counsel deemed sufficient to prove enhanced punishment factor beyond a reasonable doubt). The government cites to other state cases, *State v. Woodson*, 705 S.W.2d 677, 679 (Tenn.Crim.App.1985); *Lewis v. State*, 681 P.2d 772, 774 (Okla.Crim.App.1984), but these were cases where the fact of prior conviction caused an enhancement of sentence, and it is not clear whether, under these state laws, the prior conviction was considered an element or simply as a sentencing factor to which the constitutional requirement of proof beyond a reasonable doubt did not apply.

cient to indicate an identity of person"); *Miller v. State*, 573 So.2d 405, 406 (Fla. Dist.Ct.App.1991) (holding that a certified copy of a prior judgment in the name of "Freddie Miller" was insufficient to prove the identity of defendant "Alton Freddie Miller" to establish prior felony conviction for conviction of possession of a firearm by a convicted felon because "the identity of an accused must be established by affirmative evidence, mere proof of identity of names being insufficient"); *State v. Garrett*, 281 Or. 281, 574 P.2d 639, 640 (1978) (narrowly construing and declining to apply a statutory presumption of identity of person from identity of names).

A number of state courts have gone further, holding that identity of name as between the defendant and a prior conviction record cannot establish identity *even for sentencing enhancements.* *See Boswell v. United States*, 511 A.2d 29, 33 (D.C.1986) (D.C. Superior Court records bearing the name "Raymond Boswell" were insufficient to prove beyond a reasonable doubt the identity of defendant "Raymond F. Boswell" to establish prior convictions for enhancement of defendant's sentence); *State v. Hauss*, 140 Ariz. 230, 681 P.2d 382, 383 (1984) (upholding a finding of the defendant's identity for purposes of establishing prior convictions for sentencing enhancement based on testimony of a probation officer and holding that the government must "establish the defendant as the person to whom the [certificate of conviction] refers"); *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423, 429 n. 8 (1980) (finding that defendant was properly established as a habitual offender under the Habitual Criminal Act by testimony, and reiterating the West Virginia rule that "mere proof of identity of names between the defendant and the person named in the prior conviction fails to establish identity in a recidivist proceeding [beyond a reasonable doubt]"); *Chavez v. State*, 604

P.2d 1341, 1351 (Wyo.1979) (ruling that authenticated copies of prior judgments bearing same name as defendant were not sufficient to establish prima facie evidence of identity for purpose of habitual offender sentencing enhancement); *State v. Curtis*, 338 So.2d 662, 664 (La.1976) (upholding conviction under multiple offender statute where identity is established with photographs matching defendant, but noting that "[w]e do not consider that identity of name of defendant and the person previously convicted is sufficient evidence of identity"); *Grady*, 211 A.2d at 677–78 (ruling that judgment of conviction in same name as defendant's was sufficient to impeach witness credibility but was insufficient to establish identity as element of habitual offender crime: "While the identity of the full name of the defendant with that of the person named in the prior California conviction is some evidence that each name refers to the same person, it was not adequate, alone, to constitute proof beyond a reasonable doubt that Grady was the person named in the California criminal judgment, especially since the prior conviction occurred over ten years before and in a very populous state far removed from Connecticut."); *State v. Post*, 251 Iowa 345, 99 N.W.2d 314, 317 (Iowa 1959) (noting: "Some courts, including ours, hold identity of names is not sufficient and there must be other evidence of identity of the accused and the person of the same name who was previously convicted," and upholding enhancement of punishment based on former conviction under substantial evidence standard where certificate of conviction in same name as defendant was corroborated by testimony of arresting officer of prior offense who identified defendant); *State v. Harkness*, 1 Wash.2d 530, 96 P.2d 460, 465–66 (1939) (overturning conviction of defendant as habitual criminal under beyond a reasonable

doubt standard where certified copy of prior judgment in same name as defendant was only proof of identity). *Cf. Commonwealth v. King,* 455 Pa. 363, 316 A.2d 878, 879–880 (1974); *Commonwealth v. Smith,* 69 Pa. D. & C. 529, 531–32, 1950 WL 2861 (1949).

■ (4) *Corroboration.* The government also argues that, even if the similarity of name between the defendant and the certificate of conviction was insufficient, the defendant's identity as the person convicted in 1984 was sufficiently corroborated by other evidence. The government points to the fact that both Aaron Jacksons possessed firearms (as the 1984 conviction was in part for Possession of a Weapon, 3rd Degree, while the present defendant was shown to have ammunition in his safe at his residence). We acknowledge that the possession of firearms by both Aarons adds *slightly* to the degree of likelihood that the two are the same, but it adds very little. The possession of weapons is not a rarity in New York City. If both Aaron Jacksons owned something unusual—a blue parrot, a rhesus monkey, or a green Maserati—the coincidence of such unusual details would add more substantially to the

likelihood that the two were the same; but ownership of firearms, it appears, is no more unusual in New York City than ownership of a pet, or a car.[14] There is nothing improbable about two different persons, each named Aaron Jackson, each owning firearms in New York City eighteen years apart.[15]

■ The government next asserts that because Agent White testified that his duties included the investigation of the possession of firearms by convicted felons and that he seized Jackson's ammunition, it was a natural inference from this evidence that "Jackson was prohibited from possessing the ammunition as a convicted felon."

The argument seems to be: (i) the agent would not have seized the ammunition if the agent had not believed its possession was illegal, (ii) the agent would not have believed the defendant's possession of the ammunition was illegal if the agent had not believed the defendant had a prior felony conviction, and (iii) the agent would not have believed the defendant had a prior felony conviction unless the defendant in fact had a prior felony conviction. The argument seems to come down to the

**14.** The Department of Justice's Office of Juvenile Justice and Delinquency Policy estimated that in 1993 there were two million illegal guns in New York City. *See* http://www.ojjdp.ncjrs.org/pubs/gun_violence/profile19.html. The New York Times reports that animal welfare advocates estimate New Yorkers own two million pets. David W. Chen, *A Bill to Ease Restrictions on Living with Pets,* N.Y. Times, Dec. 9, 2003, at B3. According to the 2000 Census, there are approximately 1.8 million cars owned by New York City residents for household use. *See* http://factfinder.census.gov.

**15.** The government cites two cases which, it claims, support its corroboration argument. They are not apposite. In *Matula v. United States,* 327 F.2d 337, 338 (10th Cir.1964),

there was far more corroboration of the defendants' identities than in our case. The court observed numerous shared details that identified the defendants as the convicted persons. *United States v. Kilburn,* 596 F.2d 928, 935 (10th Cir.1978), presented a different problem. In *Kilburn,* the trial judge had presided over the defendant's prior trial and informed the jury that the defendant was the person previously convicted and named in the judgment of conviction offered as evidence. In affirming the conviction, the Court of Appeals considered the trial judge's statement as part of the evidence. Accordingly, in that case, the identity of the defendant as the person named in the certificate of conviction was confirmed by a witness with personal knowledge of that fact. There was no problem of insufficiency of evidence. The only irregularity was that the witness was the trial judge.

proposition that insufficiency of evidence that a defendant committed a crime is overcome by evidence that a government agent believed he committed the crime. We unhesitatingly reject the argument.

B. Whether the defendant forfeited the right to contest sufficiency by deceptive conduct or by stipulation of the issue.

The government asserts that, even if the evidence presented was legally insufficient to prove the defendant's prior conviction, the insufficiency should be excused because the defense either stipulated to the fact of his prior conviction or tricked the government's attorney into relying on insufficient evidence. We reject the contention. To appraise the government's argument, we must review the pertinent colloquy, both prior to and during the trial.

Before trial, the government moved to preclude the defendant from testifying that he did not consider himself a previously convicted felon by reason of the fact that he had received a certificate of relief with respect to his 1984 conviction. The defendant argued that his possession of ammunition could not be deemed a willful violation of law if he believed, albeit incorrectly, that his certificate of relief from his prior felony conviction made the prohibition of § 922(g) inapplicable to him. The court ruled in favor of the government. In the course of the colloquy, defense counsel advised that he would not "just roll over when they put in that certificate of conviction."

When the government offered the certificate without a witness to establish its authenticity, defense counsel objected on the grounds that "there has been no witness, there has been no foundation laid for its admission." The court overruled the objection because such court records are self-authenticating. *See* Fed.R.Evid.

902(4). The court then asked the government what further evidence it would offer:

THE COURT: After you put in [the 1984 certificate] where are you?

[GOVERNMENT]: I believe we are resting.

Trial Transcript at 81. The court then turned to defense counsel to ask whether Jackson would be testifying. Defense counsel replied that, because the court had precluded Jackson from testifying that he did not believe he was a prohibited felon, Jackson would not take the stand and would put on no case. The government then asked defense counsel for clarification of the objection he had made to Government's Exhibit 3 ("GX3").

[GOVERNMENT]: Just to clean up the record on Government Exhibit 3 a little bit, I just want to make clear for the record that the defendant is not arguing that he is not the same Aaron Jackson that is mentioned in the certified judgment of conviction. That's probably what I was hearing from [defense counsel]. I don't want the Court of Appeals to think that was their basis for the objection and it wasn't addressed.

[DEFENSE COUNSEL]: Our basis for the objection is that there is no evidentiary foundation that has been laid about where this document came from.

[GOVERNMENT]: If it's authenticity, then your Honor's ruling addresses it.

Trial Transcript at 82.

On the basis of that exchange, the government argues that the defendant should be precluded from protesting the insufficiency of the evidence. It asserts:

[T]he Government specifically asked defense counsel, while its case was still open, if counsel was challenging identity [the defendant's identity as the person

whose conviction was certified by Government's Exhibit 3]. Once defense counsel had indicated that he was not, the Government refrained from introducing additional evidence on this topic. Government's Brief at 29.

The district judge found merit in the government's argument. In ruling on the defendant's motion for judgment as a matter of law based on the insufficiency of the evidence, the district court said, "[T]o grant the Defendant's motion would be to reward a kind of legal gamesmanship that the Court ought not to encourage." Although finding that the defendant had *not* stipulated to the fact of his prior conviction, the court thought that the government

> may rightly claim to have been prejudiced by the Defendant's evasiveness and parsing of his words. Defendant's unresponsive clarification of his objection created ... a clear and intentional impression that no challenge as to identity would be made. Once directly questioned, Defendant was entitled to refuse to disclose his trial tactics, but he was not entitled to purposefully engender a misunderstanding that prevented the Government [from] furnishing evidence as to [defendant's identity as the person convicted] .... While it is true that defendant did not specifically state, "we have no intention to argue identity," to overturn the verdict on this basis would be a clear triumph of form over substance. Though it would have been better practice for the Government to produce additional evidence of identity, its

claim to have justifiably relied on Defendant's in-court representations is not without merit.

The court therefore ruled that "it would not be appropriate to remove this question [of the defendant's identity as the person convicted in 1984] from the purview of the jury." We respectfully disagree. Defense counsel's response to the government's inquiry did not provide a basis for the government to believe it was excused from the constitutionally mandated burden of proof.

■■■■■ In our view, the government's characterization (quoted above) of defense counsel's representations is not a fair description of what occurred in the colloquy. Defense counsel did not say that he would not challenge the government's evidence of the defendant's identity as the person referred to by GX3. The sufficiency of the evidence was not the focus of the discussion. It was the admissibility of GX3. The question posed by the AUSA was in the context of identifying the bases for the objection to the receipt of GX3. Defense counsel answered the question, stating "Our basis for the objection is that there is no evidentiary foundation ...," to which the AUSA replied, "If it's authenticity, then your Honor's ruling addresses it." The government may have concluded that defense counsel's failure to object to the admissibility of GX3 on the grounds that it did not refer to the defendant necessarily constituted a binding concession that it did refer to the defendant. If so, this was error. It was not such a concession.[16] While defense counsel may have suspected that the AUSA misconstrued their ex-

---

**16.** The failure to object to the certificate on the ground that it does not relate to the defendant did not constitute an admission that it relates to the defendant. By offering GX3, the government properly introduced *some* evidence tending to prove the essential element of the defendant's prior conviction. Although it was not legally sufficient to prove this issue beyond a reasonable doubt, it was some evidence of this fact. A defendant's failure to object to the receipt of evidence that begins the job of proving an essential element does not relieve the government of the burden of proving the essential element beyond a reasonable doubt.

change, there was no clear manifestation that the government was relying on a commitment it believed defense counsel had made not to question the government's proof of the defendant's prior conviction. We express no view what our ruling would be in such circumstances. Upon careful review of the full record of the colloquy, we do not believe it supports a claim that defense counsel invited the error.

Equally problematic is the government's assertion that defense counsel's indication that he was not challenging the defendant's identity led the government to refrain from introducing additional evidence. This assertion is contradicted by the transcript. As quoted above, just prior to the exchange in question, the court had asked government's counsel whether it would offer any further evidence following the receipt of GX3. The AUSA answered in the negative. Where the government had just advised the judge that it would rest after introducing GX3, we do not see how the government can take the position that defense counsel's subsequent answer lulled the government into refraining from offering further evidence.

■ The government's final contention in this regard is that the defendant should be deemed to have stipulated the issue. We find no justification for this contention. The district judge rejected it as well. In fact, the colloquy took place in the context of the defendant's technical objection to the only evidence the government offered to prove the prior conviction. Advancing an objection to the evidence is not reasonably interpreted as expressing a desire to stipulate the fact. If the government had wished to avoid wasting time and expense over what it believed was an uncontroverted issue, it could simply have asked defense counsel whether the defense would stipulate. If defense counsel had responded in the affirmative, the jury could have been advised of the stipulation and the issue would have been closed. If defense counsel refused, the government would be compelled to satisfy its due process burden of introducing evidence sufficient to support a finding in its favor.

It may well be that the government's attorneys (and the court) were surprised when the defendant contested the issue of his prior conviction. Such issues are often stipulated (or in any event not contested). Furthermore, the judge and the government attorneys had heard defense counsel implicitly confirm that the conviction certificate referred to the defendant in seeking a ruling authorizing a strategy (based on the certificate of relief) that would, as a practical matter, have required the defendant to admit the fact of his prior conviction. But defense counsel had made no commitment or representation that he would not contest the prior conviction. And, there is no rule of law that prevents a defendant from adopting a surprising strategy. Having neither received, nor even clearly requested, a stipulation taking the issue out of contention, the government had no reason to expect to be excused from its constitutional obligation to prove every essential element of the crime beyond a reasonable doubt, as in every other case.[17]

---

**17.** The government cites several cases to support its claim that Jackson should not be allowed to contest the sufficiency of the proof of his prior felony conviction. They are not apposite. *See United States v. Yu–Leung,* 51 F.3d 1116, 1122 (2d Cir.1995); *United States v. Young,* 745 F.2d 733, 752 (2d Cir.1984); *United States v. Schaff,* 948 F.2d 501, 506 (9th Cir.1991). In these cases, the court barred the defendant from taking a position on appeal that was contrary to the position taken at trial. They would be pertinent only if the defendant in this case had in fact asserted that he would not contest the sufficiency of the government's evidence.

We are left in the unhappy position of being required to reverse a conviction notwithstanding our knowledge that the defendant is guilty. That is the consequence of being governed by the rule of law.

## CONCLUSION

The judgment of conviction is Reversed.