COUNTY OF MONMOUTH, PLAINTIFF-APPELLANT, v. ROBERT J. WISSELL AND BARBARA J. WISSELL, HIS WIFE, AND EDGAR ROGERS, DEFENDANTS-RESPONDENTS.

Argued May 28, 1975—Decided July 11, 1975.

36

Mr. *Robert E. McLeod* argued the cause for plaintiff-appellant (*Mr. John M. Pillsbury,* of counsel; *Messrs. Pillsbury, Russell & Ashbey,* attorneys).

Mr. *Richard J. Doyle* argued the cause for defendants-respondents (*Messrs. Carton, Nary, Witt & Arvanitis,* attorneys).

The opinion of the court was delivered by

SCHREIBER, J. The plaintiff County of Monmouth instituted a condemnation proceeding to acquire property owned by the defendants Robert J. Wissell and Barbara J. Wissell for park purposes. The County filed and served a declaration of taking so that it could take immediate possession of the property. The defendants moved to strike the declaration and restrain plaintiff from obtaining possession. The Superior Court, Law Division, denied the motion. Leave to appeal was granted and the Appellate Division reversed. The matter is before us by virtue of our having granted the plaintiff's motion for leave to appeal. *R.* 2:2–2(b).

The issue is whether a county which has the power of eminent domain to acquire private property for park purposes is empowered to take possession of that property after the institution of and before completion of the condemnation proceedings. Whether authority exists for taking such possession depends upon the interpretation of *N. J. S. A.* 20:3–17, a provision of the Eminent Domain Act of 1971. *N. J. S. A.* 20:3–1 *et seq.*

*N. J. S. A.* 20:3–17 provides that:

> At any time contemporaneous with or after the institution of an action and service of process, the condemnor may file in the action, when empowered to do so by law, and if so filed, shall also file in the recording office, a declaration of taking, * * *.

After the declaration of taking has been recorded and served on the condemnee and all occupants of the property, the right to the immediate and exclusive possession and title to the property vests in the condemnor. *N. J. S. A.* 20:3–19.

An Eminent Domain Revision Commission was created in 1962 "to study and prepare a proposed revision or revisions of the statute governing eminent domain as set forth in R. S. 20:1–1 et seq. and other statutes relating to the taking of property for public use * * *." *L.* 1962, *c.* 50. The Commission held hearings and on April 15, 1965 issued its

report. It was on the basis of the recommendations in the report that the Eminent Domain Act of 1971 was drafted.

The Commission recommended a statute creating a "uniform practice and procedure for the exercise of the power of eminent domain, equally applicable to all bodies vested with such power * * *." *Report of the Eminent Domain Revision Commission* 6–7 (1965). It traced the development of eminent domain law and pointed out that, as public and quasi-public activities expanded, necessity for acquisition of large quantities of private properties required additional and enlarged powers of eminent domain. Statutes were adopted which incorporated powers different from those in the Title 20 Act. The Commission significantly noted that:

Consequently, there are now in effect in this state in excess of some 300 statutes authorizing the exercise of the power of eminent domain. Most of those statutes (particularly those relating to most municipal, county and school board acquisitions) do *not* authorize the condemning body to take possession of land in advance of fixing and paying compensation. The statutes which do authorize "pre-payment takings" are not uniform in their provisions for *pro tanto* payment to property owners at the time of taking, and the protection of such owners with respect to the payment of any additional moneys which may be found due them. [at 12–13].

The Commission also proposed that the statute "shall permit condemning bodies to take possession of property immediately following institution of proceedings, upon making available to the property owner at that time through a deposit of funds, all or a substantial amount of the compensation to which he may become entitled." [at 7]. The Commission stated it was "essential that the condemning body be permitted to take possession of property promptly following the filing of the complaint and service of process." It "believed that the right to take possession should be granted on a uniform basis to *all* bodies possessing the power of eminent domain, except individuals or private corporations who are constitutionally prohibited from taking possession until compensation has been paid (Art. 1, Sec. 20 New Jersey Constitution 1947)." [at 17].

The recommendations were adopted by the Legislature. Assembly Bill No. 504 which was passed by the Senate and Assembly provided for uniform practice and procedure and established the right of the condemnor, except individuals or private corporations, to take possession of the property upon institution of the action.

Article V of the proposed act was entitled, "Possession of Property and Vesting of Title." The first paragraph provided that the provisions of the article were not to apply to individuals or private corporations. The second paragraph authorized a condemnor prior to commencement of the action to enter the premises to make studies, surveys, appraisals, soundings and borings. The third paragraph declared that at any time after suit was started the condemnor may file a declaration of taking. The fourth paragraph provided for a deposit of funds. Then the condemnor, after due notice, had a right to possession. The act further stated that, in the event the condemnor failed to file a declaration of taking the property, the owner could require that the condemning authority either file a declaration of taking or abandon the proceedings.

Governor Cahill conditionally vetoed the bill. In his veto message he wrote that he concurred in this legislation which would "make uniform the legal requirements for all entities and agencies having the power to condemn" and which "would increase protection to the citizen whose property is condemned." His conditional veto was made because: (1) the act did not "comply with several requirements of federal law thus resulting in the possible diminution of federal-aid monies vitally needed by our highway programs"; (2) "[t]here are also technical errors in the bill which should be eliminated to reduce confusion"; and (3) some provisions in the existing law were repealed which "should have been modified."

He returned Assembly Bill No. 504 with recommended amendments. One of the suggested changes was to amend the third paragraph in Article V by adding the words "when

empowered to do so by law." The section now reads that "the condemnor may file in the action, when empowered to do so by law * * * a declaration of taking * * *." *N. J. S. A.* 20:3–17. The purpose of this change obviously was not to satisfy the difficulties referred to in the veto message with respect to the federal aid monies or modification of some provision which had been repealed. A search of the records of the office of the personal counsel to the Governor discloses no reason for the addition of those words.

That the Governor agreed with the concept of uniformity is buttressed by two of his suggestions. He proposed the insertion of provisions that any act inconsistent with the new eminent domain law be deemed repealed; and that "[t]his act shall apply to every agency, authority, company, utility or any other entity having the power of eminent domain exercisable within the State of New Jersey" except for bodies which have been organized as a result of compacts between the States. *N. J. S. A.* 20:3–50.

The Legislature adopted the changes suggested by the Governor and he signed the amended bill, which is now the Eminent Domain Act of 1971 (*N. J. S. A.* 20:3–1 *et seq.*)

The Appellate Division reasoned that the only meaning which could be given to the phrase "when empowered to do so by law" was a reference to the respective enabling acts which vested the power of condemnation in the condemnor, 130 *N. J. Super.* 345. In other words, one would have to examine the statute which granted the condemnor the right of eminent domain to ascertain whether or not the condemnor was given the authority to make a declaration of taking and obtain possession prior to the completion of the condemnation proceedings. Otherwise, the phrase would be meaningless, and the court could not assume that was the legislative intent.

There are several difficulties with this position. It would render purposeless an entire section of the act, *N. J. S. A.* 20:3–15. That section provides that the right to immediate possession shall not apply to individuals or private corpora-

tions vested with the authority of condemnation. An examination of all the underlying enabling statutes involving individuals or private corporations reveals that none are vested with the authority to obtain possession prior to the completion of the condemnation proceedings. That being so, interpretation of the phrase "when empowered to do so by law" in the manner suggested by the Appellate Division would make the inclusion of *N. J. S. A.* 20:3–15 unnecessary. There is a strong presumption against any legislative intent to find that an entire section of a statute, plain and unambiguous on its face, is a nullity on the ground that it is useless. 110–112 *Van Wagenen Avenue Co. v. Julian*, 101 *N. J. Super.* 230, 236 (App. Div), certif. den. 52 *N. J.* 490 (1968).

The construction adopted by the Appellate Division would require a strained interpretation of *N. J. S. A.* 20: 3–25, which reads as follows:

If within 6 months from the date of appointment of commissioners, the condemnor fails to file a declaration of taking, the court, upon application of *any* condemnee, and on notice to all parties in interest, may require the condemnor, at its election, to either file a declaration of taking and make the deposit hereinabove provided, or abandon the proceedings pursuant to section 35 hereof. For good cause and upon terms, the court may extend the time for the filing of such declaration of taking, but not more than 3 months after the commencement of the action. [Emphasis supplied].

Acceptance of the Appellate Division's interpretation of *N. J. S. A.* 20:3–17 necessitates the implication that the condemnors referred to in *N. J. S. A.* 20:3–25, even though the language referred to "any" condemnor, were only those which had enabling statutes which authorized the taking of possession prior to completion of the proceedings. The purpose of *N. J. S. A.* 20:3–25 was to protect property owners. Narrowing the applicability of this provision would be contrary to one of the designs of the bill, which the Governor in his conditional veto message recognized. In passing it might be noted that *N. J. S. A.* 20:3–25 does not

apply to individuals or private corporations who are expressly excluded from its operation by *N. J. S. A.* 20:3–15.

One of the prime purposes of the law was to make uniform the legal requirements for all entities and agencies having the power to condemn. Restricting the right to immediate possession to limited circumstances for certain public bodies is contrary to that basic policy. A few examples demonstrate the point. If the lands in question had been condemned by Neptune Township for park purposes, it could have taken possession of the property upon the filing of a declaration of taking. *N. J. S. A.* 40:60–25.58. Whereas the County of Monmouth, when seeking the land for the very same reason, could not. A county sewerage authority could take possession of property upon filing a petition for condemnation (*N. J. S. A.* 40:36A–36) but a county would not be able to do that when it condemned property for a water line. *N. J. S. A.* 40A:12–4 and 5.

Admittedly, the interpretation of the language "when empowered to do so by law" in *N. J. S. A.* 20:3–17 arrived at by us herein makes the words redundant, but it does less violence to the act and to the underlying purposes of the law. Where a choice must be made between two imperfect interpretations, the view should be selected which more likely accords with the probable legislative intent. *Cf. Roman v. Sharper,* 53 *N. J.* 338, 342 (1969). Statutory interpretive technique which causes the deletion and disregard of language is justifiable to fulfill the legislative intent. *110–112 Van Wagenen Avenue Co. v. Julian, supra.* 2A *Sutherland, Statutory Construction,* § 47.37 at 167 (4th ed. 1973) states:

A majority of the cases permit the elimination or disregarding of words in a statute in order to carry out the legislative intent or meaning.

82 *C. J. S. Statutes* § 343 at 687–688 (1953) states the principle in this manner:

While, as a general rule, every word in a statute is to be given force and effect, * * * unnecessary words or clauses, words inadvertently or mistakenly used, words to which no meaning at all can be attached, or words having no meaning in harmony with the legislative intent as collected from the entire act will be treated as surplusage, and will be wholly disregarded in the construction of the act in order to effectuate the legislative intent. This will be done, however, only when necessary to make the statute conform to the obvious legislative intent; * * *.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for entry of an order denying the defendants' motion. No costs.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.