## State of Vermont v. William Stevens

[408 A.2d 622]

No. 148-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 17, 1979

*Mark J. Keller,* Chittenden County State's Attorney, and *Sandra L. Baird,* Deputy State's Attorney, Burlington, for Plaintiff.

*Blodgett & McCarran,* Burlington, for Defendant.

**Daley, J.** The defendant was convicted of a violation of 23 V.S.A. § 1201(a)(2), operating a motor vehicle on a highway while under the influence of intoxicating liquor. The State's evidence was based on the testimony of the arresting officer and the results of a breath test, which showed 0.18 of alcohol in the defendant's blood. On appeal, he claims prejudice arising out of his trial by a jury that had been impaneled and sworn sixteen days prior to hearing the case; he challenges the competency of the State's expert and the admissibility of the test results; and he asserts that the court erred in relying on 23 V.S.A. § 1204(a) to instruct the jury. He avers that this statute is medically and chemically incomprehensible and therefore is not in compliance with the due process clause of the Fourteenth Amendment.

The jury was drawn and sworn on February 28, 1978. Between that date and March 16, when trial commenced, several of the jurors sat in the trial of two felony charges. During the same period, an editorial appeared in the Burlington Free Press which noted the high incidence of liquor-related highway deaths. In these circumstances, the defendant moved to dismiss the information with prejudice. His motion was denied.

In support of the motion, the defendant argued that, when dealing with the integrity of the jury, he was obligated only to show the existence of circumstances capable of prejudicing its deliberative function, not that it was actually prejudiced. See *State v. Brisson,* 124 Vt. 211, 214, 201 A.2d 881, 883 (1964). In *Brisson, supra,* we held that a ten day separa-

tion between empaneling and the presentation of evidence was not an abuse of discretion nor prejudicial as a matter of law in a misdemeanor case. We observed that

> [I]n criminal cases, trial by jury is a constitutionally protected right. Vt. Const. Ch. I, Art. 10. Due process is involved, and the law is sensitive to any infringement or impairment. . . . Each case involving this issue [separation of juries] must be, and will be, decided on its own facts.

The rule established in *Brisson, supra,* was affirmed in *State v. White,* 129 Vt. 220, 226, 274 A.2d 690, 694 (1971), and a delay of sixty-two days was held to be prejudicial as a matter of law.

In reviewing the defendant's claim of prejudice, we have considered the impact of the workload assumed by the jurors who sat on other panels. But we also note that the trial court conducted a second voir dire, prior to the reception of evidence, to ascertain any prejudice. In addition, it offered to treat the motion to dismiss as a motion for mistrial if any matter, which could possibly affect the jury's deliberations, was discovered. None was made to appear. In those circumstances, we cannot say that the court abused its discretion in denying the motion. We have, however, strong reservations as to advance drawing of juries.

The defendant next claims error in the admissibility of certain of the State's evidence. Over the defendant's objection, the State introduced the results of a chemical analysis of a sample of the defendant's breath. It showed 0.18 alcohol by weight in the defendant's blood. The defendant asserts that this was error for two reasons. First, he argues, the state chemist, who interpreted the data, lacked the training and educational background to testify as to the ratio between alcohol in the blood and alcohol in the breath because he was not a medical doctor or a pathologist. Second, the defendant contests the adequacy of the State's demonstration of chain of custody of the breath sample.

The competency of a witness who is offered as an expert is a preliminary question for the trial court, to be decided before his testimony is received. *State* v. *Bessette,*

130 Vt. 438, 440, 296 A.2d 179, 180–81 (1972). In permitting the chemist to testify, the court implicitly found competency. Its ruling is not reversible here unless it appears from the evidence to be erroneous or is founded upon an error of law. *Currier* v. *Letourneau*, 135 Vt. 196, 203, 373 A.2d 521, 526 (1977).

In *State* v. *Phair*, 48 Vt. 366, 377 (1875), an expert was defined as a "person that possesses peculiar skill and knowledge upon the subject-matter that he is required to give an opinion upon." The chemist had served as a chemical toxicologist in the department of health for seven years. During that time, he had analyzed over three thousand breath samples. He holds a Ph.D. in organic chemistry, and was trained in gas chromatography. He testified that, based on his doctoral studies and his professional reading, he was well-acquainted with the ratio in question. On this basis, the court did not err in accepting his testimony, nor does prejudice appear.

On the question of chain of custody, the evidence shows the following. The State produced the tube test kit utilized by the police officer who administered the breath test. The testimony shows that after the sample was taken the tube was crimped and placed in a box, which was then sealed. The officer wrote his name, the name of the defendant, and the date and time the test was given, on the bottom of the box. The box, thus sealed and identified, was placed in a refrigerator at the Burlington Police Department. Three days later, the state laboratory in Burlington received the box in the same condition. No evidence of tampering was presented.

Although there is a gap in that recital, the court correctly admitted the test results. The chain need not be perfectly established. "The circumstances need only establish reasonable assurance of the identity of the sample." *State* v. *Ross*, 130 Vt. 235, 241, 290 A.2d 38, 42 (1972). See also *State* v. *Auger*, 124 Vt. 50, 57–58, 196 A.2d 562, 567 (1963). That requirement is met here.

Finally, the defendant asserts that the trial court erred in admitting the results of the breath test and in charging the jury concerning the statutory presumptions about those tests. He argues that 23 V.S.A. §§ 1204(a)(1)–(3) is, as

written, incomprehensible and, therefore, that it violates the due process clause of the Fourteenth Amendment. Sections 1204(a)(1)–(3) state:

(1) If there was at that time 0.05 per cent or less by *weight of alcohol in the person's* blood or *breath,* it shall be presumed that the person was not under the influence of intoxicating liquor.

(2) If there was at that time in excess of 0.05 per cent but less than 0.10 per cent by *weight of alcohol in the person's* blood or *breath,* such fact shall not give rise to any presumption that the person was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor.

(3) If there was at that time 0.10 per cent or more by *weight of alcohol in the person's* blood or *breath,* as shown by chemical analysis of the person's blood or breath, it shall be presumed that the person was under the influence of intoxicating liquor in violation of section 1201(a)(2) or (3) of this title.

(Emphasis added.) The defendant directs us to the following phrase in the first clause of sections (1), (2), and (3): *"weight of alcohol in the person's* blood or *breath . . . ."* (Emphasis added.) He contends that the words "or breath" make the statute impossible to apply because it implies two different, and not necessarily consistent, measures of intoxication: "weight of alcohol in the person's blood" and "weight of alcohol in the person's breath."

A percentage by weight of alcohol in the person's blood is the usual standard for gauging the level of a person's intoxication. See generally 1 R. Erwin, *Defense of Drunk Driving Cases* §§ 14.01–.03 (3d ed. 1978). It is derived from a scientifically demonstrated relationship between the concentration of alcohol in the blood and the likelihood of intoxication.[1]

---

[1] The computation is based on the fact that breath alcohol is in direct relation to that in the blood. "The validity of all breath-testing methods is based on the assumption that at any given temperature the ratio between the concentration of alcohol in the blood and that in the air from the lungs is constant." 1 R. Erwin, *supra,* § 18.01.

A similar direct relationship between alcohol in the breath and intoxication has not yet been defined, however. See 1 R. *Erwin, supra,* § 14.03, at 14–26.

In current practice, then, breath samples do not have an independent significance but are used to approximate blood alcohol concentrations.

Nonetheless, the presumptions in § 1204(a) imply a direct relationship between breath alcohol and intoxication. The defendant argues that the absence of that relationship renders the statutory presumptions "meaningless." He suggests, for example, that a person could have a 0.18 percent of alcohol in his *blood,* making him legally intoxicated under the statute, and also have a 0.05 or less of alcohol in his *breath,* which is under the legal limit. Such an inconsistency of result is possible because the weight of alcohol in the blood and the weight of alcohol in the breath—although constant—are not equal. See generally 1 R. *Erwin, supra,* § 18.01.

In urging us to strike down the statute, the defendant first proceeds from the premise that if a statute is so ambiguous or unclear that persons affected must guess at its meaning, *Lang* v. *Berger,* 427 F. Supp. 204, 210 (S.D.N.Y. 1977), it is unconstitutionally vague.

■ The statute under which the defendant was charged is not unclear, however. It explicitly states that

> (a) A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway while:
>
> . . . .
>
> (2) under the influence of intoxicating liquor . . . .

23 V.S.A. § 1201(a)(2). Its meaning is not uncertain. It adequately meets the constitutional standard of a criminal statute, namely, that it "must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *State* v. *Giant of St. Albans, Inc.,* 128 Vt. 539, 547, 268 A.2d 739, 744 (1970) (citing *United States* v. *Harriss,* 347 U.S. 612, 617 (1954)).

■ The defendant next argues that § 1204(a) is unconstitutionally vague because it is so "incomprehensible"

that the courts cannot be certain in their interpretation of the law. *Shapiro Bros. Shoe Co.* v. *Lewiston-Auburn Shoeworkers Protective Association,* 320 A.2d 247, 253 (Me. 1974). Determination of legislative intent is, he asserts, "impossible." He therefore argues that the court's charge was error. We do not agree. Although § 1204(a) is in some respects confusing, the Legislature's purpose is not unclear. Furthermore, the trial court charged correctly.

The breath sample in this case showed a .18% blood alcohol concentration. The court instructed the jury that it might presume the defendant to be under the influence of intoxicating liquor if it found that "at the time alleged in the information there was point one zero percent or more by weight of alcohol in the Defendant's blood." This instruction is consistent both with the statutory scheme and with the underlying scientific data. The trial court did not instruct the jury about the inference to be drawn were it to find that there was point one zero or more by weight of alcohol in the defendant's breath. But such an instruction was not possible under the statutory structure. Moreover, it was not required by the evidence, which was phrased in terms of blood alcohol.

Examination of subchapter 13 of chapter 13 of 23 V.S.A., "Negligent and Drunken Driving," reveals that the statute focuses on determining the presence or absence of alcohol in the defendant's blood. Within this framework, chemical analysis of the breath is used only to show the weight of alcohol in the *blood.* Section 1201(a)(1) prohibits the operation of a vehicle on a highway by a person while there is .10 or more by "weight of alcohol in his blood, as shown by chemical analysis of his breath or blood." Section 1202 provides that any "person who operates . . . any vehicle on a highway in this state is deemed to have given his consent to the taking of *a sample of his breath for the purpose of determining the alcoholic content of his blood."* (Emphasis added.) And for purposes of chemical analysis, § 1204(b) decrees that "[p]er cent by weight of alcohol in the *blood* shall be based upon milligrams of alcohol per one hundred cubic centimeters of blood." 23 V.S.A. § 1204(b) (emphasis added).

The approach outlined above is consistent with the Uniform Vehicle Code, which appears to be the model for our statute, and with the majority of states which have enacted legislation based on it. See 1 *R. Erwin, supra,* § 14.03. Statutory presumptions similar to § 1204(a) are found in the Code. Indeed, to the extent that it relies on blood alcohol concentrations, § 1204(a) contains the very presumptions found in the Code. The presumptions are based upon scientific observations of the relationship between blood alcohol and intoxication, and they state the permissible inferences to be drawn from certain levels of alcohol. By thus permitting the trier of fact to infer a certain level of intoxication from a given blood alcohol concentration, they obviate the need for expert interpretation of blood alcohol in every case.

However, inasmuch as § 1204(a) sets up presumptions based on the weight of alcohol in the defendant's *breath,* it strays from the Uniform Vehicle Code. Furthermore, it also departs from the Legislature's purpose as embodied in the structure of the statute.

The presumptions based on breath alcohol in § 1204(a) have no foundation in subchapter 13. For example, subchapter 13 does *not* prohibit operation of a motor vehicle while there is a .10 or more weight of alcohol in the *breath* as shown by chemical analysis. Cf. § 1201(a)(1). It does *not* deem a person to have given his consent for the taking of a sample of his breath for the purpose of determining the alcoholic content of his *breath.* Cf. § 1202. Nor does it define the unit volume of breath for purposes of such a chemical analysis. Cf. § 1204(b).

In summary, the Legislature has decreed under subchapter 13 that chemical tests, including breath tests, shall be taken to determine the presence of alcohol in the driver's blood. The presumption based on weight of alcohol in the defendant's breath, which is challenged by the defendant, has no role in this statutory structure. We are not required, however, to strike down the statute.

In construing a statute, every part of the statute must be considered, and every word, clause, and sentence given effect if possible. *In re Paquette,* 112 Vt. 441, 446, 27 A.2d 129, 132 (1942). But if words seem unnecessary, or have no meaning within the scheme of the statute, or seem

to have been inadvertently used, they will be treated as surplusage and disregarded in order to effectuate the Legislative intent. *County of Monmouth* v. *Wissell,* 68 N.J. 35, 44, 342 A.2d 199, 204 (1975).

The words "or breath" in the phrase, "by weight of alcohol in the person's blood *or breath"* in §§ 1204(a)(1)–(3) are unnecessary, but the confusion which the words engender can be cured easily by severance. We therefore hold that those words are hereby severed from the statute, "thereby leaving the remainder of the statute an operative whole." *Veilleux* v. *Springer,* 131 Vt. 33, 41, 300 A.2d 620, 626 (1973); 1 V.S.A. § 215.

In so construing the statute, we find no error in the court's charge. Nor is the defendant prejudiced by our holding. The results of the breath test were introduced into evidence and evaluated in terms of blood alcohol concentrations, and the jury received instructions about permissible inferences in those same terms.

*Judgment affirmed.*