*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-048

OCTOBER TERM, 2016

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Grand Isle Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Jeremy D. Ward | } | DOCKET NO. 87-9-15 Gicr |

Trial Judge: Thomas Carlson

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conviction, by jury, of negligent operation in violation of 23 V.S.A. § 1091(a). He raises numerous arguments. We affirm.

Defendant was charged with the crime above in September 2015 following a single-vehicle rollover accident. At trial, the State presented evidence that defendant was traveling in the northbound lane of Route 2 in Grand Isle. The northbound and southbound lanes were divided by two solid yellow lines, which indicates that passing is not recommended. Defendant was traveling behind a Jeep, which was towing a boat on a trailer. Defendant felt the Jeep was going too slow and pulled out of his lane to pass the Jeep on the crest of a hill. A sign at that location indicated that it was "Unsafe to Pass." Defendant was driving sixty miles per hour, ten miles above the posted speed limit, and there was limited visibility from the top of the hill. As defendant tried to pass the Jeep, he encountered a vehicle traveling toward him in the southbound lane. Defendant quickly pulled back into the northbound lane, directly in front of the Jeep, and then overcorrected, rolling his car numerous times. The Jeep owner testified that defendant was travelling too fast, that defendant cut right in front of him, and that he had to slam on his brakes to avoid a collision. He watched defendant overcorrect and then roll numerous times down the hill. The southbound driver testified as well. She stated that defendant's car came at her out of the blue. She immediately pulled to the side to avoid a head-on collision, narrowly avoiding a ditch.

Defendant testified that he passed the Jeep because he was concerned about the security of the towed boat. He stated that he did not see the "Unsafe to Pass" sign, although he acknowledged that the yellow lines between the travel lanes indicated that passing was not recommended. Defendant expressed his belief that it was a safe place to pass. Defendant's wife, who was in the passenger seat, testified in a similar vein. The jury found defendant guilty, and following a hearing, the court sentenced him to four-to-twelve months to serve, all suspended except two days, with a year of probation. Defendant's sentence was stayed and this appeal followed.

We begin with defendant's challenges to the court's pretrial ruling. Defendant asked the court to exclude evidence that his vehicle rolled over, to admit a report purportedly showing that his vehicle was rollover prone, and to admit additional government data on this subject. The trial court denied his requests.

As to his first request, defendant argued that "what happened to his car after it completed its pass" was more confusing and misleading than probative. Defendant maintained that there was no connection between the vehicle rolling over and the negligent-operation charge, likening the use of the evidence to a res ipsa loquitur-style criminal prosecution. The court found that evidence of the vehicle rolling over after the passing was relevant as to whether defendant operated his vehicle negligently. It explained that the law requires drivers to maintain "reasonable and proper control" of their vehicles, Weeks v. Burnor, 132 Vt. 603, 608 (1974), and the result of defendant's pass was relevant as to whether his control was proper. The court did not believe that evidence of the crash would unduly prejudice the jury and thus become inadmissible under V.R.E. 403. The rollover was an undisputed fact that occurred as part of a sequence of events alleged to be negligent. Under the circumstances, the court found that defendant's eventual total loss of control was not confusing or misleading to the jury.

The court also considered defendant's assertion that if the State could offer evidence of the rollover, he should be allowed to offer evidence that the rollover was actually the result of a defective design of his 2001 Subaru Forester, rather than negligent operation. Defendant sought to admit a report entitled "Rollover Stability Measurements for 2001 New Car Assessment Program (NCAP)" prepared by S.E.A., Inc. for the National Highway Traffic Safety Administration (NHTSA). Defendant did not intend to present an expert witness to testify as to the cause of the accident or to interpret the report. The court found that the report was clearly hearsay, and it rejected defendant's assertion that it was nonetheless admissible as an admission of a party opponent under V.R.E. 801(d)(2). The court found no support for the proposition that, in a prosecution, the State's Attorney could be bound by a federal government agency's statement or admission. The court also rejected the notion that the report was admissible as a public record under V.R.E. 803(8). Even if it was a public record, the court continued, absent some interpretive testimony from a qualified expert witness, the report's potential for confusing and misleading the jury far outweighed any probative value it might have. The court provided additional detail as to why it reached this conclusion.

Defendant challenges both of these rulings. He argues that evidence of the accident was not relevant to whether he acted negligently. He reiterates his suggestion that admission of this evidence relies on a res-ipsa-loquitur theory of guilt. He complains that the State did not provide an expert witness to show that his negligence caused the car to roll over.[1] As to the NHTSA report, defendant asserts that he should have been allowed to present evidence of alternative causes of the accident. He contends that the "blanket ruling against any evidence of rollover propensity was overly broad, and unjustly prejudicial." He argues that no expert witness testimony was required to interpret the NHTSA report.

We review the trial court's relevancy and prejudice and confusion decisions for abuse of discretion. See State v. Russell, 2011 VT 36, ¶¶ 6-10. Under the broad definition of relevancy, we find no error in that decision. See V.R.E. 401. We cannot find that any prejudice in admitting

---

[1] It does not appear that defendant included this argument as part of his motion in limine to the trial court, but rather made it as part of his motion for a judgment of acquittal. The State explained, in its response to defendant's motion, that it did not believe any expert witness was required because such evidence was not at the heart of the State's case. It instead relied on defendant's decision to pass a Jeep towing a boat and trailer on a hill, where there was a solid double yellow line, at sixty miles per hour, without clear visibility of the other lane of traffic. The trial court agreed with the State, and we find no basis to disturb its decision.

2

the evidence "substantially outweighed" the probative value as a matter of law. See V.R.E. 403. Thus, the decision to admit the evidence of the rollovers was within the discretion of the trial court. We similarly conclude that the exclusion of the federal government report, even if it fell within a hearsay exception, was within the discretion of the trial judge based on the absence of a witness to interpret the content of the report and the tangential nature of the rollover evidence. Generally, defendant is warring with the trial court's assessment of the weight of the evidence. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (explaining that arguments which amount to nothing more than a disagreement with court's reasoning and conclusion do not make out a case for an abuse of discretion). The trial court provided reasoned grounds for its decisions, and there was no error.

Defendant next challenges the trial court's jury instructions, complaining that the court did not accept some of his proffered instructions. Defendant raised only one objection below. He asked the court to instruct the jury that it could not infer negligence from the accident alone but must base its decision on the totality of the evidence. The court responded that it was not sure that defendant's proposed instruction was accurately worded. It explained that the correct way to convey this sentiment was to instruct the jury that it was not bound to find defendant guilty simply because there was an accident, and it had explained this in several ways in the instructions. It found that isolating such an instruction in a more specific way would mislead the jury. The court noted that it had modified the model jury instructions to respond to defendant's concern about this issue, and it would not modify them further.

Defendant fails to show error. The court was not required to adopt his instruction language. As it explained, it conveyed to the jury in its instructions that its decision must be based on the totality of the circumstances. The instructions "accurately reflect the law, and were not erroneous merely because they did not employ the exact terms . . . requested by defendant." State v. Trowell, 2015 VT 96, ¶ 19 (quotations omitted). Defendant did not raise any of his remaining arguments below, and he fails to show plain error. See State v. Buckley, 2016 VT 59, ¶¶ 14-15 (identifying plain error standard for unpreserved objections to jury instructions, noting that it "is a very high bar," and explaining that "[i]f the charge as a whole is not misleading, there is no plain error" (quoting State v. Vuley, 2013 VT 9, ¶ 43, 193 Vt. 622)).

We next consider defendant's challenge to the trial court's denial of his motion for a judgment of acquittal. He asserts that the evidence was insufficient to show that he engaged in negligent operation of his vehicle. According to defendant, the only evidence of negligence was that he crossed a double yellow line and that he may have been speeding.

In reviewing the denial of a motion for judgment of acquittal, we use the same standard as the trial court: we review the evidence "in the light most favorable to the State" and consider whether "there is sufficient evidence to convince a reasonable trier of fact that all the elements of the crime have been proven beyond a reasonable doubt." State v. McAllister, 2008 VT 3, ¶ 13, 183 Vt. 126 (quotation omitted). A defendant is entitled to acquittal "only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." Id.

There is ample evidence to support the jury's verdict here. The State needed to show that defendant operated his motor vehicle on a public highway in a negligent manner. 23 V.S.A. § 1091(a)(1). To be negligent, a person must "breach[] a duty to exercise ordinary care." Id. § 1091(a)(2). The State presented evidence that defendant decided to pass a Jeep towing a boat and trailer on a hill where there was a solid double yellow line, at a speed of sixty miles per hour,

where there was an unsafe to pass sign, and where the left side of the road was not clearly visible and free of oncoming traffic for a sufficient distance ahead. He narrowly avoided a head-on collision, narrowly avoided colliding with the Jeep, and then rolled over several times off the side of the highway. The jury could reasonably conclude, beyond a reasonable doubt, that defendant operated his car in a negligent manner. The court did not err in denying defendant's motion for a judgment of acquittal.

Defendant next argues that the court should have granted his motion for a new trial because the jury reached its verdict quickly and because defendant alleges that a juror was observed sleeping during portions of the trial. The State responded that at no time had it observed a juror sleeping, the jurors had all risen and left the courtroom together during breaks, and no juror had to be woken up at any time. It noted that defendant never raised this issue during trial. The State also noted that the jury had been polled and were unanimous in their verdict. Finally, the State observed that "brief jury deliberation alone is not a sufficient basis for a new trial," United States v. Aguilera, 625 F.3d 482, 487 (8th Cir. 2010), and that "it was the strength of the State's case which affected the duration of the jury's deliberation rather than any failure on their part to give the case adequate consideration." State v. Lumbra, 122 Vt. 467, 470 (1962). The trial court denied defendant's motion for the reasons stated in the State's response.

Under V.R.Cr.P. 33, the court may grant a new trial if required in the interests of justice. "A motion for a new trial under Rule 33 tests the sufficiency of all the evidence presented at trial and raises the question whether the jury has correctly performed its function of evaluating admittedly adequate evidence." State v. Turner, 2003 VT 73, ¶ 11, 175 Vt. 595 (quotation omitted). "The grant of a new trial is a remedy used sparingly and only in exceptional circumstances." Id. (citation omitted).

The court did not err in denying defendant's motion for a new trial. As the State argued, if defendant had observed a juror sleeping, he should have brought it to the court's attention during the trial. See, e.g., State v. Adams, 555 P.2d 358, 360 (Ariz. Ct. App. 1976) ("[T]he law is clear that a defendant must object when he learns of misconduct by a juror. He is not permitted to wait until after an unfavorable verdict is returned and then complain."); State v. Roden, 339 P.2d 438, 439 (Or. 1959) ("It is well settled that a party who learns of the misconduct of a juror during the trial may not keep silent and take advantage of it in the event of an adverse verdict."). The fact that there may have been a closed-circuit security video of the courtroom, which was routinely deleted two weeks after trial, has no bearing on defendant's failure to raise any issue about the juror to the court in a timely fashion. The State's argument as to the brevity of the jury's deliberations is equally persuasive. In Lumbra, we rejected the argument that a jury which deliberated for eight minutes acted capriciously or without adequate consideration of the evidence. As we explained, "[t]he law does not attempt to prescribe the length of time which a jury should take to arrive at a verdict. Indeed it has been held that a jury may render a verdict without retiring." 122 Vt. at 469 (citation omitted). As in Lumbra, the brevity of the deliberations reflected the strength of the State's case and the fact that there was but one issue to decide, which "was simple and uncomplicated and readily capable of resolution." Id.

4

Finally, defendant argues that he was punished at sentencing because he took the case to trial and filed an appeal.[2] The record does not support this assertion. At the close of the sentencing hearing, the court found that defendant continued to refuse to take responsibility for his actions on the day in question. He refused to admit that he had made a mistake of judgment. The court noted that defendant had taken this position at trial, and taken an appeal, but that was in no way the focus of its decision. The court explained that defendant continued to blame others for what happened that day—there was a problem with the sign, a problem with the car, there really wasn't a ditch on the eastbound driver's side, and so on. That, in the court's own words, was "the crux" of its sentencing decision. The court also emphasized that two or more people could have been easily killed that day, or injured for life. It sought to convey to defendant the importance of taking responsibility for his actions and it imposed its sentence accordingly. We have recognized that "[a] defendant's acceptance of responsibility for the offense, and a sincere demonstration of remorse, are proper considerations in sentencing." State v. Simms, 158 Vt. 173, 188 (1991). We find no support for defendant's claim that the court acted vindictively, and no basis to disturb the court's decision. See State v. Turner, 150 Vt. 72, 75 (1988) ("Absent a showing that the trial court failed to exercise discretion at all, or exercised it for purposes which are clearly untenable, or to a degree which is unreasonable, we will uphold the court's decision." (citing State v. Savo, 141 Vt. 203, 208 (1982)); see also State v. Ross, 152 Vt. 462, 472-73 (1989) (upholding sentence after finding no evidence of vindictiveness or any reason to believe that defendant's sentence was product of "anything other than an appropriate assessment of the circumstances").

Affirmed.


BY THE COURT:


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

---

[2] Defendant also contends that the sentence violated the law because the court apparently intended that he serve one year of probation during the period of his suspended sentence and for another year after that, thereby allowing for a two-year sentence. Even assuming that this was not allowed, but see 28 V.S.A. § 205(a)(2), defendant's interpretation appears at odds with the record as well as with the State's understanding of his sentence. The State expresses its understanding that once defendant begins his sentence, his one-year term of probation also begins. This interpretation is reflected in the docket entries, which show that on the day of sentencing, defendant was issued a probation warrant that expired on February 10, 2017, one year from the date of sentencing. His sentence was similarly scheduled to start on February 11, 2016. To the extent that defendant remains unsure about the nature of his sentence, he can seek clarification in the trial court.